UNITED STATES v. JORDAN MARSH CO.

**No. 4819.**—Invoices dated Kobe, Japan, December 22, 1934, etc.
Entered at Boston, Mass., February 7, 1935, etc.
Entry Nos. 8021, 1327, 8377, 155.

Third Division, Appellate Term

(Decided March 26, 1940)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, and *Richard F. Weeks*, special attorneys), for the appellant.

*Barnes, Richardson & Colburn* (*Samuel M. Richardson* of counsel) for the appellee.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: The merchandise the subject of these appeals for review of reappraisements consists of hand-hooked rugs imported from Japan. It was invoiced and entered at 0.63 yen per square foot, plus cases and packing. The appraiser advanced the rugs measuring 6 x 9 feet and rugs of larger sizes to 0.73 yen per square foot,

and rugs measuring 4 x 6 feet and smaller sizes to 0.70 yen per square foot.

At the trial before the court below the record in the case of *Jordan Marsh & Co.* v. *United States*, Reap. Dec. 4395, was, upon motion, incorporated and thereupon plaintiff rested. The Government moved in evidence a report of a special agent who investigated the market in Japan. Thus the evidence before us in this case includes all the evidence submitted in the incorporated case and in addition the special agent's report offered upon the part of the Government. It is admitted that the cotton rugs in question were manufactured by T. Kurano at Dairen, Kwantung, located in the Liaotung Peninsula within the area which was leased by China to Russia and subsequently included in a transfer to Japan with the consent of China. The merchandise was shipped from Dairen to the Oriental Purchasing Co. of Kobe, Japan, where the consular invoices were prepared and the merchandise shipped from there to the plaintiff herein. These facts were fully established by the testimony.

It is here noted that a former employee of the plaintiff testified in the incorporated case that he was connected with the company in 1934 and 1935 and had personally purchased the merchandise from T. Kurano in the spring of 1934 while in Dairen; that he made a selection of the patterns he desired and was advised by Kurano that the price was 0.63 yen per square foot. Kurano, at that time, also showed him orders received from Mandell Brothers of Chicago and Green Fabrics of New York for the same merchandise at the same price. He testified that the Oriental Purchasing Co. acted as shippers and agents for Jordan Marsh Co. and that payment for the same was made to T. Kurano by the Oriental Purchasing Co. He further testified that, when he placed the order for the merchandise with Kurano, a copy thereof was given to the Oriental Purchasing Co. so that when Kurano would send request for payment the Oriental Purchasing Co. would know it was all right to pay for the same, and further that the merchandise was then shipped from Dairen and paid for by the Oriental Purchasing Co.

However, from evidence submitted by the Government in the incorporated record it will be here noted that in special agent's report of April 12, 1935, M. Levy, the manager of the Oriental Purchasing Co., informed the special agent that T. Kurano of Dairen are manufacturers of cotton rugs and market their product solely through the Oriental Purchasing Co. at Kobe; that through arrangement with T. Kurano sales may not be made without permission of the Oriental Purchasing Co. and no permission had been given by said company prior to February 27, 1935. An inspection of the books of the Oriental Purchasing Co. disclosed to him that the company had made two shipments to Jordan Marsh Co. and two to the Oriental Rug Co.

in 1934 and, although no other sales had been made, the company was willing to sell at the same price. The company paid T. Kurano 0.63 yen per square foot for the merchandise purchased from that firm and charged their customers a commission and that this commission represented their fixed charges for doing business. It was also disclosed by the report that similar rugs were manufactured in Japan and freely offered for sale in Japan for home consumption and for export at 0.70 yen per square foot for the smaller rugs and 0.73 yen per square foot for the larger rugs.

In a further report of May 27, 1935, the special agent gave the result of an interview with T. Kurano of Dairen and also of an inspection of the firm's books. This report states that he found there was no demand for these rugs in Dairen or in the Kwantung Leased Territory and that rugs are not sold or freely offered for sale in such Territory and therefore there was no foreign-market value for the same in Kwantung; that the rugs are sold by Kurano only to or through the Oriental Purchasing Co. of Kobe for export and that T. Kurano does not do business with any other exporters and will not accept orders from any other exporting firm; that T. Kurano was offered business by the Oriental Rug Co. of New York but owing to their arrangement with the Oriental Purchasing Co. was obliged to decline the offer.

In the incorporated record the trial court found that Dairen was not a part of Japan; that the merchandise never entered the commerce of Japan; and that the appraiser erred in taking the value of such or similar merchandise in Japan as the basis for his appraisement. The court further found that from the weight of the evidence the proper dutiable export value of the merchandise is 0.63 yen per square foot, plus bales and packing, as invoiced and entered. No appeal was taken from that decision by the Government.

In the case now before us, another special agent's report dated February 1, 1939, was admitted in evidence, setting forth an interview with the acting manager, F. Rodriguez of the Oriental Purchasing Co., and also information obtained by a further examination of the said firm's books. In this report the special agent states that he found orders for the same merchandise placed by Jordan Marsh with the Oriental Purchasing Co., were placed with and made by T. Kurano, Dairen. That Kurano was advanced money by the Oriental Purchasing Co. to secure materials and fabricate the rugs. That payment was made by Jordan Marsh to the Oriental Purchasing Co. at the time of shipment from Japan. That no shipments were made to Mandell Brothers or Green Fabrics during 1934. However, a shipment was made on April 24, 1935, to Mandell Brothers on order of February 12, 1935, and to the Green Fabrics on July 12, 1935, and August 3, 1935, on order of May 28, 1935. The prices were the same as sales made to the Jordan Marsh Co. That there were four

shipments to the Oriental Rug Co. from November 5, 1934, to December 24, 1934, and one shipment to Stern Brothers of New York on July 6, 1934. All of these rugs were the same as the rugs involved herein. In all cases reported by the special agent the orders were accepted by the Oriental Purchasing Co. and placed with Kurano for manufacture. The evidence before us tends to establish that during 1934 and the first half of 1935 Kurano sold rugs to the Oriental Purchasing Co.; that all sales were made through the Oriental Purchasing Co. and that shipments made to Jordan Marsh, Mandell Brothers, and Green Fabrics were not direct sales.

However, the court below, upon consideration of the evidence adduced, held as follows:

In view of the fact that the additional evidence now before me was obtained some four years after these exportations, and the hearsay nature of all the statements contained therein, I am not inclined to give it sufficient weight and consideration to change my decision in the original case, * * *

After a careful consideration of all the evidence I find that Dairen is no part of Japan, and also that this merchandise never entered the commerce of Japan, and that the appraiser erred in taking the value of such or similar merchandise in Japan as the basis for his appraisement in these cases. *United States* v. *Meadows, Wye & Co., Inc.*, T. D. 41622.

I therefore find and hold from the weight of the evidence that the proper dutiable export values of the merchandise covered by these appeals are 0.63 yen per square foot, plus bales and packing. These appeals are to this extent, sustained. Judgment will be rendered accordingly.

In our opinion there is ample evidence in the record to establish that the cotton rugs manufactured by T. Kurano were never sold by him directly to any American importer, nor was there any market for the same in Dairen for home consumption. All of the merchandise manufactured by Kurano, by agreement between the parties, was sold to the Oriental Purchasing Co. of Japan. Therefore, it is clear that the cotton rugs have no foreign value in Dairen, nor any export value, because the said merchandise is not freely offered for sale in Dairen to all purchasers. In fact, it is not offered for sale at all in Dairen. True, the testimony of the only witness in the case rather refutes the statements made by the special agents in their various reports, but, in the circumstances, it is likely that the witness was not advised of all the facts attending sales by Kurano and thus was lead to believe that the sales were made in Dairen, thus creating a market.

As the importer has failed to establish that there is a foreign or export value for the rugs in Dairen, or any other statutory value therefor, the question as to whether Dairen is a part of Japan, or whether the merchandise entered the commerce of Japan, becomes immaterial. In view of the fact that the evidence submitted is clearly insufficient to establish Dairen as a market for rugs, either for home consumption or for export, we are of the opinion that the values found by the appraiser are presumptively correct.

Judgment will therefore be entered reversing the findings of the trial court, and holding the values found by the appraiser to be the dutiable value of the merchandise.